IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No. 23-80015-CIV-CANNON

JOHN ANTHONY CASTRO                      )
12 Park Place, Mansfield, TX 76063       )
202-594-4344                             )
     Plaintiff,                         )
                                         )
*v.*                                     )
                                         )
DONALD J. TRUMP                          )
1100 S. Ocean Blvd, Palm Beach, FL 33480 )
     Defendant.                         )

FILED BY ____ ᴄᴩs ____ D.C.

JAN 19 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

## FIRST AMENDED VERIFIED COMPLAINT FOR DECLARATORY
## AND INJUNCTIVE RELIEF

## **TABLE OF CONTENTS**

I.   **CLAIM FOR RELIEF** ................................................................................................ 1

II.  **MORE DEFINITIVE STATEMENTS AND ANALYSES** ........................................ 3

## **TABLE OF AUTHORITIES**

**Cases**

*aff'd*, No. 12-5335, 2013 WL 1164506 (D.C. Cir. Mar. 11, 2013) ............................................ 7

*Butler*, 2 Bart. El. Cas. 461 (1868) ........................................................................ 15

*Case of Davis*, 7 F. Cas. 63, 90, 92-94, (C.C.D. Va. 1867) (No. 3,621a) .............................. 17

*Citizens for Resp. & Ethics in Washington v. Trump*, 939 F.3d 131, 143 (2d Cir. 2019) ........ 9

*Citizens United v. FEC*, 558 U.S. 310 (2010) ....................................................................... 8

*Fulani v. Brady*, 935 F.2d 1324, 1327-28 (D.C. Cir. 1991) ...................................................... 7

*Fulani v. League*, 882 F.2d 621 (2d Cir. 1989) ...................................................................... 7

*Gottlieb v. FEC*, 143 F.3d 618, 621 (D.C. Cir. 1998) ............................................................. 7

*Griffin*, 11 F. Cas. 7 (C.C.D. Va. 1869) ................................................................................ 16

*Griffin*, 11 F. Cas. 7 (C.C.D. Va. 1869) (No. 5,815) ............................................................. 17

*Hassan v. FEC*, 893 F. Supp. 2d 248, 255 (D.D.C. 2012) ...................................................... 7

*In re Griffin*, 11 F. Cas. 7 (C.C.D. Va. 1869) ....................................................................... 13

J.G. Randall, *The Civil War and Reconstruction 707* (1937) (first omission in original) ...... 13

*La. Energy and Power Auth. v. FERC*, 141 F.3d 364, 367 (D.C. Cir. 1998) ........................... 8

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) .......................... 9

*McConnell v. FEC*, 540 U.S. 93, 107 ................................................................................... 8

*McKee v. Young*, 2 Bart. El. Cas. 422 (1868) ...................................................................... 13

*Mendoza v. Perez*, 754 F.3d 1002, 1011 (D.C. Cir. 2014) ..................................................... 8

*New World Radio, Inc. v. FCC*, 294 F.3d 164, 170 (D.C. Cir. 2002)...................................... 7

*Powell v. McCormack*, 395 U.S. 486 (1969) ........................................................... 18

*Public Citizen v. FEC*, 788 F.3d 312 (DC Cir. 2015)................................................ 9

*Shays v. FEC*, 414 F.3d 76, 83 (D.C. Cir. 2005) (citation omitted). ................................... 3, 6

*Shays v. FEC*, 414 F.3d 76, 87 (D.C. Cir. 2005) ...................................................... 3, 7

*Sherley v. Sebelius*, 610 F.3d 69, 72–73 (D.C. Cir. 2010).......................................... 8

*Tanzin v. Tanvir*, 141 S. Ct. 486, 491 (2020)........................................................ 11

*U.S. v. Powell*, 65 N.C. 709 (C.C.D.N.C. 1871)................................................. 11, 16

*U.S. v. Powell*, 65 N.C. 709 (C.C.D.N.C. 1871).................................................. 18

**Statutes**

28 U.S.C. § 1331............................................................................ 3

28 U.S.C. § 1391(b)(1) .................................................................. 4

28 U.S.C. § 1746........................................................................ 20

28 U.S.C. § 2201(a) ..................................................................... 5

28 U.S.C. § 455........................................................................ 11

**Other Authorities**

*Act of May 31*, 1870 (First Ku Klux Klan Act), ch. 114, § 14, 16 Stat. 140, 143; id. at § 15

   (imposing criminal penalties for knowing Section Three violations) ................................ 17

C. Ellen Connally, *The Use of the Fourteenth Amendment by Salmon P. Chase in the Trial of*

   *Jefferson Davis*, 42 Akron L. Rev. 1165, 1165 (2009) ......................................... 13

Eric Foner, *Reconstruction: America's Unfinished Revolution 1863-1877*, at 259 (1988).... 14

Jonathan Truman Dorris, *Pardon and Amnesty Under Lincoln and Johnson – The Restoration of the Confederates to Their Rights and Privileges 1861-1898*, at 4 (1953)... 13

*Lawton's Case*, 18 Op.Atty.Gen. 149 (1885) ........................................................................ 16

*McKee v. Young*, 2 Bart. El. Cas. 422 (1868). ..................................................................... 13

Richard M. Re, Christopher M. Re, *Voting and Vice: Criminal Disenfranchisement and the Reconstruction Amendments*, 121 Yale L.J. 1584, 1622–23 (2012) .................................... 14

Sam D. Elliott, When the United States Attorney Sued to Remove Half the Tennessee Supreme Court ....................................................................................................................... 17

The Quo Warranto Cases of 1870, 49 Tenn B.J. 20 (2013) .................................................... 17

## <u>FIRST AMENDED VERIFIED COMPLAINT FOR DECLARATORY AND</u>
## <u>INJUNCTIVE RELIEF</u>

TO THE HONORABLE COURT:

Plaintiff, JOHN ANTHONY CASTRO, appearing *pro se*, files this First Amended Verified Complaint for Declaratory and Injunctive Relief against Defendant Donald John Trump and alleges as follows:

## I.   <u>CLAIM FOR RELIEF</u>

### SHORT & PLAIN STATEMENT SHOWING JURISDICTION

1.      Because this cause of action arises under Section 3 of the 14th Amendment to the U.S. Constitution, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

### PARTIES

2.      Plaintiff John Anthony Castro is a U.S. citizen and Republican primary presidential candidate (Candidate FEC ID Number P40007320) for the 2024 Presidential Election who currently resides at 12 Park Place in Mansfield, Texas.

3.      Defendant Donald John Trump is a U.S. citizen and Republican primary presidential candidate (Candidate FEC ID Number P80001571) for the 2024 Presidential Election who currently resides at 1100 South Ocean Boulevard in West Palm Beach, Florida.

### VENUE

4.      Because Defendant resides in this district, venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1).

### SHORT & PLAIN STATEMENT SHOWING ENTITLEMENT TO RELIEF

5.      Section 3 of the 14th Amendment is self-executing and creates an implied cause

of action for a fellow candidate to obtain relief for a political competitive injury by challenging another candidate's constitutional eligibility on the grounds that they engaged in or provided "aid or comfort" to an insurrection.

6.   On January 6, 2021, after witnessing a large group of Trump supporters violently attacking the United States Capitol to prevent the lawful certification of the 2020 election results with the goal of unlawfully compelling Donald John Trump's inauguration on January 20, 2021 (hereafter referred to as the "January 6th Insurrection"), Defendant Donald John Trump stated on live television, "we love you, you're very special" to the insurrectionists.  Defendant Donald John Trump provided the insurrectionists with comfort in the form of words of sympathy.

7.   On January 29, 2022, Defendant Donald John Trump publicly stated, "If I run and if I win, we will treat those people from January 6 fairly. We will treat them fairly. And if it requires pardons, we will give them pardons." Defendant Donald John Trump promised the insurrectionists aid in the form of executive pardons for their criminal attempt to unlawfully overturn the 2020 election results.

8.   Based on these two instances and other acts of ratification of the acts of and sympathy with the convicted criminals of the January 6th Insurrection, Defendant Donald John Trump provided "aid or comfort" to an insurrection in violation of Section 3 of the 14th Amendment to the U.S. Constitution and is, therefore, constitutionally ineligible to pursue or hold any public office in the United States.

9.   Because Plaintiff is a fellow FEC-registered Republican primary candidate, Plaintiff will suffer an injury that may be redressed by the federal judiciary with declaratory and/or injunctive relief.

**DEMAND FOR RELIEF**

10.    Pursuant to 28 U.S.C. § 2201(a), Plaintiff requests this Court to "declare the rights and other legal relations of" Plaintiff John Anthony Castro with regard to his standing to bring a suit challenging Defendant's constitutional eligibility to pursue public office and appear on state ballots for the nomination or election to the Presidency of the United States.

11.    Pursuant to 28 U.S.C. § 2201(a), Plaintiff requests this Court "declare the rights and other legal relations of" Defendant Donald John Trump with regard to his constitutional ineligibility to pursue public office and appear on state ballots for the nomination for or election to the Presidency of the United States due to his provision of aid or comfort to the January 6 insurrectionists.

12.    If and only if this Court finds Defendant Donald John Trump constitutionally ineligible to pursue or hold public office, Plaintiff contingently requests this Court enjoin Defendant Donald John Trump from submitting an application to appear on the ballot in any U.S. state since that would be an unconstitutional act by Defendant Donald John Trump.

13.    Alternatively, Plaintiff requests any other relief he may be entitled to at law or equity.

## II.    MORE DEFINITIVE STATEMENTS AND ANALYSES

14.    The framers of Section 3 of the 14th Amendment intended the constitutional provision to be both self-executing and to provide a cause of action.  More specifically, the Union sought to punish the insurrectionary Confederacy by making their ability to hold public office unconstitutional.  The framers did this with the specific intent of removing the more politically popular insurrectionists from the ballot since they violated their oaths of allegiance to the U.S. Constitution and the use of peaceful political mechanisms to non-violently resolve

3

disputes. Based upon this novel interpretation of Section 3 of the 14th Amendment, Plaintiff brings this cause of action against Defendant Donald J. Trump to have the federal judiciary make a declaration regarding everyone's legal rights and status, including, but not limited to a declaration regarding the constitutionality of Donald. J. Trump's presidential candidacy, to enjoin any further fundraising or campaigning, and to ensure the prevention of his inauguration in the event the Republican Party is unable to prevent his nomination and subsequent election.

## PLAINTIFF'S STANDING TO BRING SUIT

15.     To establish standing, a plaintiff must show that it has suffered an "injury in fact caused by the challenged conduct and redressable through relief sought from the court."[1]

16.     The U.S. Court of Appeals for the D.C. Circuit has explained that political competitor standing is akin to economic competitor standing, whereby a plaintiff has standing to challenge a government action that benefits a plaintiff's competitor to the detriment of the plaintiff.[2] Political competitor standing, however, is only available to plaintiffs who can show that they "personally compete[] in the same arena with the same party to whom the government has bestowed the assertedly illegal benefit."[3] The D.C. Circuit has also held that if a plaintiff can show he is a "direct and current competitor," then competitor standing must be recognized as a matter of

---

[1] *Shays v. FEC*, 414 F.3d 76, 83 (D.C. Cir. 2005) (citation omitted).
[2] *See Shays v. FEC*, 414 F.3d 76, 87 (D.C. Cir. 2005).
[3] *Gottlieb v. FEC*, 143 F.3d 618, 621 (D.C. Cir. 1998) (internal quotation marks omitted); *see also Fulani v. Brady*, 935 F.2d 1324, 1327-28 (D.C. Cir. 1991) (holding that presidential candidate did not have "competitor standing" to challenge CPD's tax-exempt status where the candidate was not eligible for tax-exempt status); *Hassan v. FEC*, 893 F. Supp. 2d 248, 255 (D.D.C. 2012), *aff'd*, No. 12-5335, 2013 WL 1164506 (D.C. Cir. Mar. 11, 2013) ("Plaintiff cannot show that he personally competes in the same arena with candidates who receive funding under the Fund Act because he has not shown that he is or imminently will be eligible for that funding.").

established case law.[4]  Courts have recognized that a "candidate—as opposed to individual voters and political action groups—would theoretically have standing based upon a 'competitive injury'" if he could show that "he personally competes in the same arena with the same party."[5]

17.    John Anthony Castro registered as a candidate with the Federal Election Commission and is directly and currently competing against Donald J. Trump for the Republican nomination for the Presidency of the United States.  As such, Plaintiff meets all of the criteria for standing.

18.    A fellow primary candidate, whose injury would be competitive injury in the form of a diminution of votes and/or fundraising, has federal judicial standing to sue a candidate he or she believes is ineligible to hold office.[6]

19.    Plaintiff will suffer a concrete competitive injury if the constitutionally ineligible Donald J. Trump campaign committee is permitted to raise funds, which puts Plaintiff at a fundraising disadvantage.[7]  If the federal judiciary permits Donald J. Trump's campaigning, Mr. Trump will be the Republican Party's presumptive nominee and completely dominate at fundraising.  This will siphon off tens if not hundreds of millions of dollars to a constitutionally ineligible candidate in violation of Section 3 of the 14th Amendment to the U.S. Constitution.  There is no question this political competitor injury is traceable to the actual competitor, Donald J. Trump.

20.    Plaintiff understands that the competitor standing doctrine recognizes "parties

---

[4] *New World Radio, Inc. v. FCC*, 294 F.3d 164, 170 (D.C. Cir. 2002)
[5] *Hassan v. FEC*, 893 F. Supp. 2d 248, 255 n.6 (D.D.C. 2012) (emphases added) (quoting *Gottlieb*, 143 F.3d at 621)
[6] *See Fulani v. League*, 882 F.2d 621 (2d Cir. 1989).
[7] *See McConnell v. FEC*, 540 U.S. 93, 107, *overruled on other grounds by Citizens United v. FEC*, 558 U.S. 310 (2010).

suffer constitutional injury in fact when agencies... otherwise allow increased competition."[8]  In this case, the seemingly most appropriate time to bring suit would be when Plaintiff Castro and Defendant Trump both file paperwork in New Hampshire, Pennsylvania, Georgia, and Arizona to appear on the ballot as Presidential candidates, but this cause of action is primarily for declaratory relief to resolve the issue of constitutional eligibility prior to said action for the sake of judicial efficiency when the time arises to prevent the issue from transforming into a non-justiciable political question given the rapid timeframe of the primary election season.  In accordance with the D.C. Circuit's ruling in *Mendoza v. Perez*, Plaintiff will suffer a constitutional injury in fact sufficient to confer Article III standing.[9]

21.     When Section 3 of the 14th Amendment was adopted, it was specifically designed to ensure that non-insurrectionists did not have to politically compete with the more popular pro-insurrectionist politicians in the South.  It was specifically designed to remove overwhelming popular pro-insurrectionists from the ballot.  As such, Plaintiff is not simply within the zone of interests; Plaintiff is the precise type of person Section 3 of the 14th Amendment sought to protect.

22.     Although the U.S. Supreme Court arguably abolished the doctrine of prudential standing in *Lexmark*,[10] Plaintiff satisfies prudential standing in that his injury is particularized and concrete, he satisfies Article III standing, and he is within the zone of interests sought to be protected by Section 3 of the 14th Amendment to the

---

[8] *See Mendoza v. Perez*, 754 F.3d 1002, 1011 (D.C. Cir. 2014) (citing to *La. Energy and Power Auth. v. FERC*, 141 F.3d 364, 367 (D.C. Cir. 1998); *Sherley v. Sebelius*, 610 F.3d 69, 72–73 (D.C. Cir. 2010)).
[9] *Mendoza v. Perez*, 754 F.3d 1002 (D.C. Cir. 2014)
[10] *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)

U.S. Constitution.[11]

23.    Allowing Donald J. Trump to continue being perceived as an eligible candidate in violation of Section 3 of the 14th Amendment of the United States Constitution through judicial inaction constitutes unlawful inaction that allows a competitive injury to Plaintiff and bestows a competitive advantage in the same Republican primary in which Plaintiff competes with Donald J. Trump.[12]

## RELEVANT LAW & LEGAL ANALYSIS

24.    Donald J. Trump is a declared candidate for the Republican nomination for the Presidency of the United States for the 2024 election season.

25.    Article II, Section 1 of the United States Constitution states that any person who enters the Office of the President of the United States of America shall take the following Oath or Affirmation: "I do solemnly swear (or affirm) that I will faithfully execute the Office of President of the United States, and will to the best of my ability, preserve, protect and defend the Constitution of the United States."

26.    Since the founding of our nation, those who assume civil or military positions under federal or state law are required to take an oath and thereby state that they will defend the Constitution of the United States against all enemies, foreign and *domestic.*

27.    Taking the side of a foreign enemy is covered by the Treason Clause in Article III, Section 3, Clause 1 of the United States Constitution. It states: "Treason against the United States, shall consist only in levying War against them, or in adhering to their Enemies, giving them Aid *and* Comfort."

---

[11] *Public Citizen v. FEC*, 788 F.3d 312 (DC Cir. 2015).
[12] *See Citizens for Resp. & Ethics in Washington v. Trump*, 939 F.3d 131, 143 (2d Cir. 2019).

28.     The Anti-Insurrection Qualification Clause in Section 3 of the 14th Amendment of the United States Constitution covers taking the side of a *domestic enemy.*

## Anti-Insurrection Qualification Clause

29.     Section 3 of the 14th Amendment of the United States Constitution is best described as the Anti-Insurrection Qualification Clause. It establishes that, in order to be eligible to hold any office in the United States, a person must have never violated an Oath of Office, which always includes a pledge to support the United States Constitution.

30.     The Anti-Insurrection Qualification Clause in Section 3 of the 14th Amendment of the United States Constitution states that "[n]o person shall be a Senator or Representative in Congress, or elector of President and Vice President, or hold any office, civil or military, under the United States, or under any State, who, having previously taken an oath, as a member of Congress, or as an officer of the United States, or as a member of any State legislature, or as an executive or judicial officer of any State, to support the Constitution of the United States, shall have *engaged in* insurrection or rebellion against the same, or given *aid or comfort* to the enemies thereof. But Congress may by a vote of two-thirds of *each* House, remove such disability."

## Amendment XIV, Section 3, Clause 1

31.     Clause 1 of Section 3 of the 14th Amendment of the United States Constitution reads: "No person shall... hold any office, civil or military, under the United States, or under any State, who, having previously taken an oath... to support

the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof."

32.  The word "engaged" for the purpose of Section 3 of the 14th Amendment "implies, and was intended to imply, a voluntary effort to assist the Insurrection… And further, the… action must spring from [a] want of sympathy with the insurrectionary movement."[13]

33.  As the U.S. Supreme Court has articulated, "[w]ithout a statutory definition, [one must] turn to the phrase's plain meaning."[14]

34.  Merriam-Webster's Dictionary defines an "insurrection" to be "an act or instance of revolting against civil authority or an established government." An instance is "a step, stage, or situation viewed as part of a process or series of events." Participation in the early or late stages of an event still constitute "an instance." This would apply to the wife of United States Supreme Court Justice Clarence Thomas, Virginia Thomas, requiring Justice Thomas' mandatory recusal under 28 U.S.C. § 455, which Plaintiff asserts herein to preserve for appeal.

35.  Of the term "revolting," Merriam-Webster says "to renounce… subjection." Renounce is to "refuse to follow, obey, or recognize." Subjection is being "placed under authority." Thus, an insurrection include all stages of the event wherein at *least one stage* there was a refusal to recognize the authority of an established governmental body, such as the United States Senate and its ceremonial reading of the certified election results and engaging in violence to undermine *both* that process and the United States Constitution.

36.  Donald J. Trump summoned the mob to our nation's Capitol, organized and

---

[13] *See U.S. v. Powell*, 65 N.C. 709 (C.C.D.N.C. 1871).
[14] *See Tanzin v. Tanvir*, 141 S. Ct. 486, 491 (2020) (thereafter referencing Merriam-Webster's Collegiate Dictionary for the plain meaning of a term).

assembled the mob, allowed weapons in the crowd by ordering security to let them pass, radicalized the mob with incendiary rhetoric, ordered them to march to the Capitol, refused to make public statements to denounce the violence and call off the mob for 187 minutes, and when it became clear that the mob had failed to use violence to prevent the certification of the election results, then and only then, did former President Donald J. Trump order the mob to go home, but not before saying "we love you" and calling the violent mob "very special" after they had violently attacked the United States Capitol. All of these instances were part of the overall January 6 Insurrection in which Donald J. Trump was directly and irrefutably involved.

37.    Clause 1 of Section 3 of the 14th Amendment to the United States Constitution declares that anyone deemed to have engaged in insurrection are "enemies." However, less focus is given to the fact that Section 3 similarly disqualifies those who have given "aid or comfort" to insurrectionists.

38.    "Aid or comfort may be given to an enemy by words of encouragement, or the expression of an opinion, from one occupying an influential position."[15]

39.    There is a distinction between domestic "aid or comfort" to insurrectionists and foreign "aid and comfort" to invaders. This was highlighted by President Andrew Johnson's comments to a New Hampshire delegation that "Treason is a crime and must be punished as a crime… It must not be excused as an unsuccessful rebellion."[16] It was later reasoned that if "insurrection and levying war was accepted as treason, hundreds of thousands of men, most of them youths, were guilty of the

---

[15] *McKee v. Young*, 2 Bart. El. Cas. 422 (1868).
[16] *See* J.G. Randall, *The Civil War and Reconstruction 707* (1937) (first omission in original).

offense that carried a mandatory sentence of death by hanging."[17] "To the Congress, the old law was unworkable for the [Civil War]... [thus, on] July 31, 1861, Congress passed a law which provided that anyone found guilty of conspiracy to overthrow the United States Government or to interfere with the operation of its laws shall be guilty of a high crime."[18]

40.    "The offenses for which exclusion from office is denounced are not merely engaging in insurrection... but the giving of aid or comfort to their enemies."[19]  In that case, Judge Chase, whom himself was balancing his need for impartiality with his desire to pursue the Presidency, insinuated that the inclusion of the "aid or comfort" disqualifier in Section 3 of the 14th Amendment applied only in the context of a foreign invasion or war.  Judge Chase was an abolitionist but still an ambitious and aspiring politician who considered campaigning for the Presidency and did not want to upset the South by declaring that the reference in Section 3 to "enemies" applied to the insurrectionists and rebels that fought for the Confederacy. Giving "aid and comfort" to foreign enemies was already covered by the Treason Clause in Article III, Section 3, Clause 1 of the United States Constitution. Section 3 of the 14th Amendment, being a post-civil war amendment, was referring solely to *domestic* enemies that engaged in insurrection or rebellion against the United States and had previously given an oath to support the Constitution; thereby only targeting higher-level officials that are required to take oaths.

41.    This is supported by the fact that the "final version of Section 3 reflected a refinement of the radicals' philosophy of formal equality. Opposition to the broader House

---

[17] *See* Jonathan Truman Dorris, *Pardon and Amnesty Under Lincoln and Johnson – The Restoration of the Confederates to Their Rights and Privileges 1861-1898*, at 4 (1953).
[18] *See* C. Ellen Connally, *The Use of the Fourteenth Amendment by Salmon P. Chase in the Trial of Jefferson Davis*, 42 Akron L. Rev. 1165, 1165 (2009).
[19] *In re Griffin*, 11 F. Cas. 7 (C.C.D. Va. 1869).

proposal arose in part from the widespread view that many Confederate soldiers, even if not conscripted, had little real choice but to join the Southern cause. In that light, the final version of Section 3 was not less punitive so much as it was more targeted. Whereas the House version promised to affect the rank and file, the Senate version would reach only the senior leadership. Moreover, the Senate version was, in important ways, harsher than the House version. The House measure would have sunset in 1870 and applied only to federal elections. By contrast, the final version [of Section 3] permanently rendered virtually the entire political leadership of the South ineligible for office, both state and federal. The final version of Section 3 thus reflected a nuanced view: as compared with felons, Confederate officials were more deserving of punishment and Southern foot soldiers were less so."[20]

42.     Every federal, state, and local public official that offered words of encouragement, show of sympathy, or expression of support for or defense of, the January 6 Insurrection must, pursuant to Section 3 of the 14th Amendment to the United States Constitution, be declared ineligible to hold any civil or military office in the United States at the federal, state, or local level.

43.     Donald J. Trump is not the only public official ineligible to hold public office under Section 3 of the 14th Amendment. Soon-to-be Defendants whose Plaintiffs will be primary challengers with judicial standing to sue will include, but most *certainly* will not be limited to, Congressmembers Marjorie Taylor Greene (R-Ga.), Mo Brooks (R-Ala.), Lauren Boebert (R-Colo.), Louie Gohmert (R-Texas), Paul Gosar (R-Ariz.),

---

[20] *See* Richard M. Re, Christopher M. Re, *Voting and Vice: Criminal Disenfranchisement and the Reconstruction Amendments*, 121 Yale L.J. 1584, 1622–23 (2012); *also see* Eric Foner, *Reconstruction: America's Unfinished Revolution 1863-1877*, at 259 (1988).

and Andy Biggs (R-Ariz.) for giving "aid or comfort" to insurrectionists.

### Amendment XIV, Section 3, Clause 2

44.     Clause 2 of Section 3 of the 14th Amendment to the United States Constitution reads: "Congress may, by a vote of two-third of *each* House, remove such disability." (*Emphasis added*).

45.     Plaintiff emphasizes the Constitution's use of the term "each" since there appears to be widespread misconception that only the U.S. House of Representatives is needed to remove the disqualifying disability, which stems from the 1868 case of *Butler*.[21] Therefore, if 290 members of the U.S. House of Representatives and 67 members of the U.S. Senate vote to remove the disqualifying disability, a person otherwise ineligible to hold office under Section 3 of the 14th Amendment could hold office. In today's political climate, this is impossible.

46.     It is also critical to anticipatorily highlight that a Presidential pardon does not remove this disability since the United States Constitution provides that only Congress may lift the disability. This is contrary to an old, outdated, and clearly biased Attorney General Opinion from Southern Confederate Augustus Garland that attempted to limit its scope; it inexplicably ignored the term "each" and suggested a presidential pardon could remove the qualification disability notwithstanding the Constitution's clear and exclusive reservation and delegation of that power solely to Congress.[22]

### Scope of Amendment XIV

47.     The disqualification applies to both civil and military positions at both the federal and state level, which has been judicially determined to even include a local constable

---

[21] *See Butler*, 2 Bart. El. Cas. 461 (1868).
[22] *See Lawton's Case*, 18 Op.Atty.Gen. 149 (1885).

position.[23]

48.     "There can be no office which is not either legislative, judicial, or executive [covered by Section 3 of the 14th Amendment because]... it embraces every office... [and] it was passed to punish those high in authority... for their bad faith toward the government they had sworn [in their oath of office] to support."[24]

49.     "The amendment applies to all the states of the Union, to all offices under the United States or under any state, and to all persons in the category of prohibition, and for all time present and future."[25]  It is a lifetime ban from public office.

50.     As mentioned before, Section 3 of the 14th Amendment is merely an Anti-Insurrection Qualification Clause. It was not intended to be a punishment for someone who engaged in an insurrection or gave aid or comfort to insurrectionists any more than the Natural Born Citizen qualification clause is punitive. If you are not a natural born citizen of the United States, you cannot hold the Office of the Presidency. If you violated your oath of office by engaging in an insurrection, you cannot hold the Office of the Presidency. It's a mere qualification for the office.

### Enforcement of Amendment XIV

51.     In an attempt to neutralize Section 3 of the 14th Amendment, some commentators dating as far back as 1868 developed the legal theory that this provision of the United States Constitution was unenforceable without enabling legislation. Such a suggestion is legally baseless, patently frivolous, and wholly without merit.

---

[23] *See U.S. v. Powell*, 65 N.C. 709 (C.C.D.N.C. 1871).
[24] *Id.*
[25] *In re Griffin*, 11 F. Cas. 7 (C.C.D. Va. 1869).

52.     In fact, it was the President of the Confederacy, Jefferson Davis, who, in 1868,

contended that Section 3 *was* self-executing and, therefore, barred his criminal trial for treason.

*See Gerard N. Magliocca, Amnesty and Section Three of the Fourteenth Amendment*, 36 Const.

Comment. 87 (2021). Moreover, it was Judge Chase who agreed in Jefferson Davis' criminal

trial that Section 3 was self-executing; thereby implicating the prohibition against Double

Jeopardy.[26] Shortly thereafter, however, Justice Chase reversed his position and declared that

Section 3 was not self-executing when a black criminal defendant challenged his conviction

on the grounds that the judge presiding over his trial fought for the Confederacy and was,

therefore, ineligible to preside over his trial rendering his guilty verdict null and void.[27]

Following these irreconcilable rulings from a clearly biased Justice Chase who could not make

up his mind, Congress decided to act on its own by enacting Section 3 enforcement statutes

and, shortly thereafter, federal prosecutors began bringing actions to oust ineligible officials,

including half of the Tennessee Supreme Court.[28] Congress' enactment of legislation was not

an admission that Section 3 was not self-executing; it was to avoid the lunacy of a clearly

biased, conflicted, and politically active Chief Justice that could not perform the functions of

his office in a neutral, intellectual, fair, and impartial manner.

53.     In 1871, Amos Powell was indicted, via an enabling statute making it a *crime*

to knowingly violate Section 3 of the 14th Amendment, "for accepting the office of sheriff

when disqualified from holding office by the 14th Amendment... [and the] indictment charged

that the defendant knowingly accepted office under the state of North Carolina, to which he

---

[26] *See Case of Davis*, 7 F. Cas. 63, 90, 92-94, (C.C.D. Va. 1867) (No. 3,621a) (describing Davis' argument and the Government's response); *Id.* at 102 (noting the Chief Justice's view).
[27] *In re Griffin*, 11 F. Cas. 7 (C.C.D. Va. 1869) (No. 5,815).
[28] *See Act of May 31*, 1870 (First Ku Klux Klan Act), ch. 114, § 14, 16 Stat. 140, 143; id. at § 15 (imposing criminal penalties for knowing Section Three violations); Sam D. Elliott, When the United States Attorney Sued to Remove Half the Tennessee Supreme Court: The Quo Warranto Cases of 1870, 49 Tenn B.J. 20 (2013).

was ineligible under the provisions of the 3d section of the 14th Amendment."[29]  In other words, to attach criminal penalties, enabling legislation is absolutely required since Section 3 of the 14th Amendment makes no reference to criminal penalties.

54.    Congress has jurisdiction to expel or exclude its own members that it determines have violated Section 3 of the 14th Amendment.[30]  However, it is unclear whether Congress can unilaterally impose said disability on the Executive Branch since that could be deemed an encroachment on a separate branch of the federal government. Nevertheless, a Congressional finding of liability would certainly aid the federal judiciary's fact-finding mission.

55.    Historically, the neutral finder of fact and arbiter of law has been the federal judiciary. Consistent with our principles of federalism and separation of powers, it is more likely that the federal judiciary and, in particular, the United States Supreme Court would be the only authority that the drafters of Section 3 could have possibly envisioned as being the most competent and legitimate body to determine whether an individual is ineligible under the Anti-Insurrection Qualification Clause.


Respectfully submitted

January 19, 2023                    By _____

JOHN ANTHONY CASTRO
12 Park Place
Mansfield, TX 76063
Tel. (202) 594 - 4344
J.Castro@JohnCastro.com
**PLAINTIFF *PRO SE***

---

[29] *See U.S. v. Powell*, 65 N.C. 709 (C.C.D.N.C. 1871).
[30] *See Powell v. McCormack*, 395 U.S. 486 (1969).

## **VERIFICATION**

I, John Anthony Castro, declare as follows:

1. I am the plaintiff in the present case, a U.S. citizen, and an FEC-registered Republican primary presidential candidate (Candidate FEC ID Number P40007320) for the 2024 Presidential Election.

2. I intend to fully utilize all of my skills and knowledge to prevent Donald J. Trump from being elected to or holding any public office in the U.S.

3. I have personal first-hand knowledge of the matters set forth in this Complaint, including witnessing Donald J. Trump providing words of comfort to the insurrectionists on live television, and, if called upon to testify, I would competently testify as to the matters stated herein.

4. Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury that the entirety of the foregoing First Amended Complaint is true and correct.

Executed on January 19, 2023.

John Anthony Castro