FILED BY _____ *CC* _ D.C.

FEB 28 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

---

Case No. 23-80015-CIV-CANNON

---

JOHN ANTHONY CASTRO
12 Park Place, Mansfield, TX 76063
202-594-4344
Plaintiff,

*v.*

DONALD JOHN TRUMP
1100 S. Ocean Blvd, Palm Beach, FL 33480
Defendant.

---

## PLAINTIFF'S VERIFIED RESPONSE IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS

---

JOHN ANTHONY CASTRO

12 Park Place
Mansfield, TX 76063
Tel. (202) 792- 6600
J.Castro@JohnCastro.com

**PLAINTIFF *PRO SE***

# TABLE OF CONTENTS

Table of Contents.................................................................................................... i

Table of Authorities............................................................................................... iii

Introduction and Legal Standard............................................................................ 1

Argument ................................................................................................................ 3

I.    Plaintiff Has Political Competitor Standing Granting the Court Subject Matter Jurisdiction............................................................................................................... 3

    A.   Castro can show an Injury-in-Fact................................................................ 4

       1.   Diminution of Votes and/or Fundraising ................................................ 4

       2.   Ripeness of the Injury ............................................................................ 6

          (a)   Fitness of the Issue: Plaintiff is an Active 2024 Presidential Candidate............... 8

             (i)    Plaintiff is a Bona Fide Candidate..................................................... 8

             (ii)   Not Remote or Abstract: The Competition for Voters and Donors Has Already Begun ........................................................................................ 12

          (b)   Threat of Severe Hardship if Judgment Withheld............................... 13

             (i)    Withholding consideration would result in Plaintiff losing voters and donors to a constitutionally ineligible candidate. .................................................. 15

             (ii)   Withholding consideration would risk the controversy not being timely addressed by the U.S. Supreme Court before the primary elections thereby mooting the issue and forever denying Plaintiff any relief and redressability........................ 15

             (iii)  Withholding consideration would compel Plaintiff to Invest Millions of his own funds to campaign with lower odds of success.......................................... 16

       3.   Plaintiff is Within the Zone of Interests Sought to Be Protected.............................. 16

    B.   Traceability ................................................................................................ 17

       1.   Plaintiff's Injury to Traceable to Defendant's Unconstitutional Candidacy ........... 17

    C.   Redressability.............................................................................................. 17

       1.   Answer Federal Question as Prerequisite to Relief ................................... 18

       2.   A Declaratory Judgment Would Redress Plaintiff's Injury by Removing an Unconstitutional and Disqualified Competitor ................................................. 18

          (a)   Declaration Whether Trump Provided Aid or Comfort to Insurrectionists ........ 19

          (b)   If Trump was Found to Have Provided Aid or Comfort to the Insurrection, Could Trump be Enjoined from Campaigning as that Would Be Knowingly Fraudulent Misrepresentation.......................................................................... 19

          (c)   If Trump was Found to Have Provided Aid or Comfort to the Insurrection, Could Trump Be Enjoined from the Unconstitutional Act of Submitting a State Ballot Access Application.......................................................................................... 19

i

(d)    If Trump was Found to Have Provided Aid or Comfort to the Insurrection, Could the Declaratory Judgment Permit State-Level Enforcement to Enjoin State Election Authorities from Accepting the Ballot Application...................................................... 20

(e)    Alternatively, s a Write-In General Election Candidate, Does Plaintiff Have Standing to Enjoin Trump's Inauguration ................................................................... 20

(f)    Lastly, Declaratory Relief Act Relaxes Redressability Analysis ........................ 20

II.   Plaintiff Has Stated a Valid Claim under the Self-Executing Section 3 of the 14th Amendment................................................................................................................... 21

A.   Section 3 of the 14th Amendment is Self-Executing and Provides an Implied Cause of Action............................................................................................................................ 21

III.   Plaintiff is Entitled to the More Lenient *Pro Se* Standard ........................................... 24

# TABLE OF AUTHORITIES

**Cases**

*Aaron Enterprises, Inc. v. Federal Insurance Company,*
  415 F.Supp.3d 595 (E.D. Pa. 2019) ............................................................................. 8

*Abbot Labs. v. Gardner,*
  387 U.S. 136 (1967)..................................................................................................... 6

*Aralac, Inc. v. Hat Corp. of Am.,*
  166 F.2d 286, 290 (3d Cir. 1948) .............................................................................. 19

*Art-Metal-USA, Inc. v. Solomon,*
  473 F. Supp. 1 (D.D.C. 1978)..................................................................................... 15

Ashcroft v. Iqbal,
  556 U.S. 662 (2009)..................................................................................................... 2

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)..................................................................................................... 1

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,*
  403 U.S. 388 (1971)................................................................................................... 23

*Case of Davis,*
  7 F. Cas. 63, 90 (C.C.D. Va. 1867) (No. 3,621a) ..................................................... 24

*Competitive Enter. Inst. v. NHTSA,*
  901 F.2d 107, 118 (D.C. Cir. 1990) ........................................................................... 19

*Dayao v. Staley,*
  303 F. Supp. 16 (S.D. Tex. 1969), aff'd, 424 F.2d 1131 (5th Cir. 1970).................... 7

*Doe v. Mattis,*
  928 F.3d 1 (D.C. Cir. 2019) ....................................................................................... 15

*Duggins v. Hunt,*
  323 F.2d 746 (10th Cir. 1963) ................................................................................... 19

*Fulani v. Brady,*
  935 F.2d 1324 (D.C. Cir. 1991).............................................................................. 4, 6

*Golden v. Zwickler,*
  394 U.S. 103 (1969).................................................................................................. 14

*Gottlieb v. FEC,*
  143 F.3d 618 (D.C. Cir. 1998) ................................................................ 4

*Gov't Emp. Ins. Co. v. LeBleu,*
  272 F. Supp. 421 (E.D. La. 1967) ............................................................ 8

*Great Am. Ins. Co. v. Houston Gen. Ins. Co.,*
  735 F. Supp. 581 (S.D.N.Y. 1990) .......................................................... 8

*GTE Directories Pub. Corp. v. Trimen America, Inc.,*
  67 F.3d 1563 (11th Cir. 1995) ................................................................ 7

*Guessefeldt v. McGrath,*
  342 U.S. 308 (1952) ............................................................................... 2

*Hardware Mut. Cas. Co. v. Schantz,*
  178 F.2d 779, 780 (5th Cir. 1949) .......................................................... 8

*Harvey M. Jasper Ret. Tr. v. Ivax Corp.,*
  920 F. Supp. 1260 (S.D. Fla. 1995) ......................................................... 2

*Hassan v. FEC,*
  893 F. Supp. 2d 248 (D.D.C. 2012), aff'd, No. 12-5335, 2013 WL 1164506 (D.C. Cir. 2013) 4

*Herbert v. Nat'l Acad. of Sciences,*
  974 F.2d 192 (D.C. Cir.1992). ................................................................ 2

*Hohri v. United States,*
  782 F.2d 227 (D.C. Cir. 1986), vacated on other grounds, 482 U.S. 64 (1987). ........................ 2

*Hughes v. Rowe,*
  449 U.S. 5 (1980) ................................................................................. 26

*Hughes v. Rowe,*
  449 U.S. 5, 10 (1980) ........................................................................... 26

*Hum. Res. Mgmt., Inc. v. Weaver,*
  442 F. Supp. 241 (D.D.C. 1977) ........................................................... 15

*In re Griffin,*
  11 F. Cas. 7 (C.C.D. Va. 1869) (No. 5,815). .......................................... 24

*Kossick v. United Fruit Co.,*
  365 U.S. 731 (1961 ............................................................................... 2

*League of Women Voters of the U.S. v. Newby,*
  838 F.3d 1 (D.C. Cir. 2016) ................................................................. 16

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014)......................................................................................................... 18

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)........................................................................................................... 3

*Massachusetts L. Reform Inst. v. Legal Servs. Corp.*,
   581 F. Supp. 1179 (D.D.C. 984)...................................................................................... 15

*McCray v. Lee*,
   963 F.3d 110, 119 (2d Cir. 2020) ..................................................................................... 3

*McGraw-Edison Co. v. Preformed Line Prod. Co.*,
   362 F.2d 339 (9th Cir. 1966) .......................................................................................... 19

*Nat'l Cancer Hosp. of Am. v. Webster*,
   251 F.2d 466 (2d Cir. 1958); .......................................................................................... 19

*New World Radio, Inc. v. FCC*,
   294 F.3d 164 (D.C. Cir. 2002)........................................................................................... 4

*Plains All Am. Pipeline L.P. v. Cook*,
   866 F.3d 534, 539-540 (3d Cir. 2017) .............................................................................. 6

*Powell v. Lennon*,
   914 F.2d 1459 (11th Cir. 1990) ...................................................................................... 26

*Public Citizen v. FEC*,
   788 F.3d 312 (D.C. Cir. 2015)........................................................................................ 18

*Raines v. Byrd*,
   521 U.S. 811 (1997).......................................................................................................... 3

*Richardson v. Trump*,
   496 F. Supp. 3d 165 (D.D.C. 2020)................................................................................ 17

*Scott-Burr Stores Corp. v. Wilcox*,
   94 F.2d 989 (5th Cir. 1952) .............................................................................................. 8

*See Conforti v. Hanlon*,
   No. CV2008267ZNQTJB, 2022 WL 1744774, (D.N.J. May 31, 2022)............................ 5

*Shays v. FEC*,
   414 F.3d 76 (D.C. Cir. 2005). ...................................................................................... 3, 4

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016).......................................................................................................... 3

*Step-Saver Data Sys., Lnc. v. Wyse Tech.*,
    912 F.2d 643 (3d Cir. 1990) ........................................................................... 6

*Tannenbaum v. United States*,
    148 F.3d 1262 (11th Cir. 1998) ..................................................................... 26

*TikTok Inc. v. Trump*,
    507 F. Supp. 3d 92 (D.D.C. 2020) ................................................................ 16

*United States v. Fisher-Otis Co.*,
    496 F.2d 1146 (10th Cir. 1974) ...................................................................... 8

*United States v. New Wrinkle, Inc.*,
    342 U.S. 371 (1952) ........................................................................................ 2

*Walker Process Equip., Inc. v. FMC Corp.*,
    356 F.2d 449 (7th Cir. 1966) ........................................................................ 19

*Wimberly v. Clark Controller Co.*,
    364 F.2d 225, 226 (6th Cir. 1966) .................................................................. 2

**Statutes**

28 U.S.C. § 2201(a) ............................................................................................ 7

Act of May 31, 1870 (First Civil Rights Enforcement Act of 1870), 41 Cong. Ch. 114 § 14, May
31, 1870, 16 Stat. 140, 143……………………………………………………………24

**Other Authorities**

H.R. Rep. No. 117 – 663 (2002). ......................................................................... 3

**Rules**

Fed. R. Civ. P. 11(c)(2).......................................................................................... 9
Fed. R. Civ. P. 12(b)(1).......................................................................................... 2
Fed.R. Civ. P. 12(b)(6).......................................................................................... 3

**Constitutional Provisions**

U.S. Const. art. III, § 2, cl. 1 ............................................................................... 3
U.S. Const., art. XIV, § 3 ..................................................................................... 6

**Secondary Sources**

Alia Slisco, Elon Musk Ridiculed Over Twitter Deal Backtrack: 'Rocket Boy Taps Out', July 8,
    2022,https://www.newsweek.com/elon-musk-ridiculed-over-twitter-deal-backtrack-rocketboy
    -taps-out-1723122 .......................................................................................... 12

Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure 2d § 1350 .................... 2

Darragh Roche, Neil Gorsuch Just Said the Quiet Part Out Loud, December 28, 2022, https://www.newsweek.com/neil-gorsuch-quiet-part-out-loud-supreme-court-1769854 ........ 12

Emily Birnbaum and Chris Mills Rodrigo, Twitter falling short on pledge to verify primary candidates, February 25, 2020, https://thehill.com/policy/technology/484453-twitter-falling-short-on-pledge-to-verify-primary-candidates/ ...................................................................... 11

Gerard N. Magliocca, Amnesty and Section Three of the Fourteenth Amendment, 36 Const. Comment. 87 (2021 ............................................................................................................. 23

RJ Frometa, Republican Candidate John Anthony Castro Raises His Voice in Support of George Floyd Protesters, June 19, 2020, https://ventsmagazine.com/2020/06/19/republican-candidate-john-anthony-castro-raises-his-voice-in-support-of-george-floyd-protesters/ ......................... 11

Sam D. Elliott, When the United States Attorney Sued to Remove Half the Tennessee Supreme Court: The Quo Warranto Cases of 1870, 49 Tenn. Bar J. 20 (2013). ...................................... 24

See Peter J. Reily, Wrong Signature Voids Million-Dollar Plus Refund Claim, February 24, 2020, https://www.forbes.com/sites/peterjreilly/2020/02/24/wrong-signature-voids-million-plus-refund-claim/?sh=423bc0a44cf2 ....................................................................................... 11

Xander Landen, Ron Johnson Takes Heat for Linking School Shootings to 'Wokeness',May 28, 2022, https://www.newsweek.com/ron-johnson-takes-heat-linking-school-shootingswokeness1 711136 ............................................................................................................................. 12

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No. 23-80015-CIV-CANNON

JOHN ANTHONY CASTRO                    )
12 Park Place, Mansfield, TX 76063     )
202-594-4344                           )
  Plaintiff,                  )
                                       )
v.                                     )
                                       )
DONALD J. TRUMP                        )
1100 S. Ocean Blvd, Palm Beach, FL 33480 )
  Defendant.                  )

## PLAINTIFF'S VERIFIED RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff, John Anthony Castro, *pro se*, ("Castro") hereby submits his *Response in Opposition to Defendant's Motion to Dismiss*, and, in support thereof, states the following:

## LEGAL STANDARD

The U.S. Supreme Court has explained that when a court is faced with a motion to dismiss, a complaint will survive dismissal if the "*facts* alleged" in the complaint "allow the court to draw" jurisdiction on a claim as a "reasonable inference."[1] Here, this Court must deny Trump's motion as Castro has pled with particularity that he has Article III standing for having suffered a political competitive injury-in-fact in the form of a diminution of votes and/or donors, traceable to Trump, and redressable by this Court in the form of declaratory judgments rooted in Castro's factual

---

[1] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff need not cite every legal theory upon which relief can be granted. If the facts support a legal theory not raised in the complaint, it will survive dismissal since the emphasis is on the reasonable inferences for legal relief that the facts support.

1

assertion that Trump engaged in and/or provided "aid *or* comfort" to the insurrectionists that attacked our U.S. Capitol on January 6, 2021, and is, therefore, disqualified from pursuing and/or holding public office pursuant to Section 3 of the 14th Amendment to the United States Constitution.  For purposes of Trump's motion to dismiss, Castro's factual allegations must be accepted as true.[2]  And because Castro has proven precisely how a declaratory judgment would be useful, for example, in future state-level enforcement actions for injunctive relief, there is no question the declaratory judgment would, in fact, be useful.

A court resolving a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) must apply closer scrutiny to the complaint's factual allegations than when resolving a motion to dismiss for the failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).[3] Moreover, the court is not limited to the allegations contained in the complaint.[4]  Instead, to determine whether the court has jurisdiction over a claim, a court must consider materials outside the pleadings.[5]

In fact, even when considering a motion to dismiss for the failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a court must consider all material incorporated by reference, such as

---

[2] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *also see Kossick v. United Fruit Co.*, 365 U.S. 731 (1961); *United States v. New Wrinkle, Inc.*, 342 U.S. 371 (1952); *Guessefeldt v. McGrath*, 342 U.S. 308 (1952).

[3] 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure 2d § 1350.  In a motion to dismiss for failure to state a claim, however, it would be improper to consider matters outside of the pleadings. *Harvey M. Jasper Ret. Tr. v. Ivax Corp.*, 920 F. Supp. 1260 (S.D. Fla. 1995); also see *Wimberly v. Clark Controller Co.*, 364 F.2d 225, 226 (6th Cir. 1966); .  When a defendant motions to dismiss for lack of subject matter jurisdiction, however, they open the door to all matters outside of the pleadings.

[4] *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987).

[5] *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir.1992).

2

the findings of the U.S. House Select Committee to Investigate the January 6th Attack on the U.S.

Capitol, which Castro again specifically incorporates by reference.[6]

## ARGUMENT

### I.    Plaintiff Has Political Competitor Standing Granting the Court Subject Matter Jurisdiction Over This Case

The Constitution limits the jurisdiction of the federal courts to actual cases or

controversies.[7] "One element of the case-or-controversy requirement is that [plaintiffs], based on

their complaint, must establish that they have standing to sue."[8]  The doctrine of standing, "rooted

in the traditional understanding of a case or controversy... developed... to ensure that federal

courts do not exceed their authority as it has been traditionally understood."[9] "[T]he 'irreducible

constitutional minimum' of standing consists of three elements."[10]  The "plaintiff must have (1)

suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant,

and (3) that is likely to be redressed by a favorable judicial decision."[11]

The United States Court of Appeals for the D.C. Circuit has recognized the concept of

*Political Competitor Standing* on the basis that an injury would logically be diminution of votes

traceable to the political competitor and redressable by a court.[12]  Political Competitor Standing,

however, is only available to plaintiffs who can show that they "personally compete[] in the same

arena with the same party."[13]  The D.C. Circuit has also held that if a plaintiff can show that he is

---

[6] *See* ECF 1, V. Comp. ¶ 49; *also see McCray v. Lee*, 963 F.3d 110, 119 (2d Cir. 2020) Rule 12(b)(6) ("[C]onsideration of a motion is limited to the contents of the operative complaint and documents attached to it *or incorporated into it by reference*."); H.R. Rep. No. 117 – 663 (2002).
[7] U.S. Const. art. III, § 2, cl. 1, *see also* Raines v. Byrd, 521 U.S. 811, 818 (1997).
[8] *Raines*, 521 U.S. at 818.
[9] *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016).
[10] *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).
[11] *Id.*
[12] *See Shays v. FEC*, 414 F.3d 76, 87 (D.C. Cir. 2005).
[13] *Gottlieb v. FEC*, 143 F.3d 618, 621 (D.C. Cir. 1998) (internal quotation marks omitted); *see also Fulani v. Brady*, 935 F.2d 1324, 1327-28 (D.C. Cir. 1991) (holding that presidential candidate did

a "direct and current competitor," then competitor standing must be recognized as a matter of law.[14] The federal judiciary has recognized that a candidate, as opposed to "individual voters and political action groups" would have "standing based upon a 'competitive injury'" if, again, the candidate can show that he "personally competes in the same arena with the same party."[15]

Castro is an FEC-registered 2024 Republican Presidential candidate with the Federal Election Commission and is currently directly competing against Trump for the Republican nomination for the Presidency of the United States. As such, Castro has political competitor standing to bring this suit and Trump's arguments contained in his motion to dismiss are without merit.

**A. Castro's Injury-in-Fact**

To establish standing, a plaintiff must show that the plaintiff has suffered an "injury in fact caused by the challenged conduct [of the defendant] and redressable through relief sought from the court."[16]

Despite Castro's clear allegations contained in his complaint, Trump disputes, without merit, that Castro has not established that he has suffered an injury-in-fact.

**1. Diminution of Votes and/or Fundraising**

Castro and Trump are not only competing for the same political position within the same political party but are also appealing to the same voter base. Castro retains support from unions

---

not have "competitor standing" to challenge CPD's tax-exempt status where the candidate was not eligible for tax exempt status); *Hassan v. FEC*, 893 F. Supp. 2d 248, 255 (D.D.C. 2012), *aff'd*, No. 12-5335, 2013 WL 1164506 (D.C. Cir. 2013) ("Plaintiff cannot show that he personally competes in the same arena with candidates who receive funding under the Fund Act because he has not shown that he is or imminently will be eligible for that funding.").

[14] *New World Radio, Inc. v. FCC*, 294 F.3d 164, 170 (D.C. Cir. 2002)

[15] *Hassan*, 893 F. Supp. 2d at 255 n.6 (D.D.C. 2012) (emphases added) (quoting *Gottlieb*, 143 F.3d at 621)

[16] *Shays*, 414 F.3d at 83 (internal citation omitted).

4

and his extensive experiences with union organizing is appealing to working class Americans. Similarly, Trump also does not appeal to big donors and most of his donations consist of donors giving small amounts. Consequently, Castro will be primarily targeting the same voters as Trump, and Castro will allocate a significant portion of his campaign finances to such cause.

In fact, throughout his campaigning efforts to date, Castro has spoken to thousands of voters who have expressed that they would vote for Castro *only if* Trump is not a presidential candidate as they maintain political loyalty to Trump. In fact, Trump must agree since he did not challenge Castro's allegation of diminution of votes contained in Castro's First Amended Verified Complaint. *See* ECF 7, Amd. V. Comp. ¶ 17; ECF 18, MTD, *generally.*

Trump has not refuted that Castro will suffer an injury-in-fact based on a diminution of votes and political support. On this basis alone, an injury-in-fact has been not only established but conceded by Trump.[17]

A primary candidate has judicial standing to bring a claim challenging the eligibility of a fellow primary candidate for competitive injury in the form of a diminution of votes and/or fundraising if the primary candidate believes that the fellow primary candidate is ineligible to hold public office and to prevent actions irreconcilable with the U.S. Constitution.[18]

Castro will *further* suffer *irreparable* competitive injuries if Trump, who is constitutionally ineligible to hold office, is able to attempt to secure votes in primary elections and raise funds. Trump's constitutionally unauthorized undertaking will put Castro at both a voter and donor disadvantage.

---

[17] *See Conforti v. Hanlon*, No. CV2008267ZNQTJB, 2022 WL 1744774, at *12 (D.N.J. May 31, 2022).

[18] *See Fulani*, 882 F.2d at 628.

Trump, without this Court's intervention, will siphon off votes in violation of Section 3 of the 14th Amendment to the U.S. Constitution.[19]  In fact, Trump conceded in his motion to dismiss that there are only "162 Republican Party candidates" for the Presidency of the United States thereby identifying the actual named individuals with particularity that his candidacy is injuring.[20] By definition, this "particularizes" the injury.  Castro thanks Trump for this concession.

### 2.  *Ripeness of the Injury*

"If further factual development would help the court adjudicate the case, the case may be unripe and therefore nonjusticiable."[21]

Trump's argument that this action is not yet ripe is contradicted by his active campaigning to secure the support of voters and donors for his Presidential candidacy.  Trump's argument that Castro fails to show ripeness of the injury can only be sustained if Trump were not actively campaigning.  Like Castro, Trump is a declared candidate currently courting voters and seeking funds on his campaign website: www.DonaldJTrump.com.  Castro also has an active campaign website: www.JohnCastro.com.  Put plainly, Trump and Castro are both pursuing the same voter and donor pies, and Trump is currently taking a slices of the voter and donor pie that logically reduces the available pie left for Castro.  The injury is factually real and presently happening at this very moment.  We need not wait until voters actually cast their ballot since that would make

---

[19] U.S. Const., art. XIV, § 3 "No person shall be a[n]…elector of President…or hold any office… under the United States,…who,…shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof."

[19] *See Fulani*, 882 F.2d at 628.

[20] *See* ECF 18, MTD p.12.

[21] *Abbot Labs. v. Gardner*, 387 U.S. 136 (1967).  Within the Third Circuit, the Step-Saver Test is applied in declaratory judgment cases and looks to "(1) the adversity of the parties' interests, (2) the conclusiveness of the judgment, and (3) the utility of the judgment." *Step-Saver Data Sys., Lnc. v. Wyse Tech.*, 912 F.2d 643 (3d Cir. 1990); *see Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 539-540 (3d Cir. 2017).

the injury an irreparable harm, render those votes irrelevant, and possibly transform this controversy into a nonjusticiable political question.

Under the Declaratory Judgment Act, a case or controversy must exist at the time the declaratory judgment action is filed.[22]  However, despite Plaintiff evidencing the ripeness of this controversy, the Declaratory Judgment Act was designed to declare the rights and legal relations and issues between parties prior to ripeness and to assist the parties in determining possible options for redressability, if any.[23]  The Declaratory Judgment Act is designed to enable courts to declare rights of adverse parties to lawsuit even though that suit may not have ripened to a point at which an affirmative remedy is needed.[24] As such, the standard for a judgment under the Declaratory Judgment Act is whether such judgment would *merely* be useful.[25]

A declaratory judgment is an opportunity for a party to determine the point at which a controversy would ripen in order to seek prompt resolution by a court rather than waiting for

an opposing party with a ripe injury or controversy to sue, particularly where delay in seeking judicial intervention will cause substantial prejudice to a declaratory judgment plaintiff.[26]

Castro intends to use this declaratory judgment to swiftly enjoin both Trump's submission of a ballot application as well as any state's acceptance of the ballot application.

Again, the purpose of 28 U.S.C. § 2201(a) is to clarify rights and legal relations in actual controversies before they ripen into actual violations of law or unconstitutional conduct.[27]  There

---

[22] *GTE Directories Pub. Corp. v. Trimen America, Inc.*, 67 F.3d 1563 (11th Cir. 1995).

[23] 28 U.S.C. § 2201(a) ("[W]hether or not… relief… could be sought.")

[24] *Dayao v. Staley*, 303 F. Supp. 16 (S.D. Tex. 1969), *aff'd*, 424 F.2d 1131 (5th Cir. 1970)

[25] *Aaron Enterprises, Inc. v. Federal Insurance Company*, , 415 F.Supp. 3d 595 (E.D. Pa. 2019).

[26] *Great Am. Ins. Co. v. Houston Gen. Ins. Co.*, 735 F. Supp. 581 (S.D.N.Y. 1990)

[27] *Hardware Mut. Cas. Co. v. Schantz*, 178 F.2d 779, 780 (5th Cir. 1949), *see also United States v. Fisher-Otis Co.*, 496 F.2d 1146 (10th Cir. 1974), *see also Scott-Burr Stores Corp. v. Wilcox*, 194 F.2d 989 (5th Cir. 1952), *see also Gov't Emp. Ins. Co. v. LeBleu*, 272 F. Supp. 421 (E.D. La. 1967)

are not further factual developments required. Castro is being politically injured, and the time has come for the federal judiciary to address this issue.

        (a)     **Fitness of the Issue**

              (i)    **Plaintiff is a Bona Fide and Active 2024 Republican Presidential Candidate**

Trump attempts to characterize this civil action as a "publicity stunt" by Castro. Such an assertion can only be interpreted as Castro initiating an action either for an improper purpose or as a planned civil action designed to draw the public's attention to Castro's presidential campaign. Because Trump has not moved for sanctions pursuant to Fed. R. Civ. P. 11(c)(2), Trump's characterization must be the latter.[28]

Trump is effectively arguing that one of Castro's motivating factors for bringing this civil action is to draw the public's attention to Castro's Presidential campaign. While Castro is not denying that this action has the potential to elevate his political status, demonstrate his legal ingenuity, and display his executive leadership by single-handedly ending Trump's political career, Castro's sole motivation to bring this suit is to remedy an actual injury-in-fact.

No one knows "publicity stunts" more than Trump. In March 2011, Trump embraced the "birther" movement to question the birthplace of former President Barack Hussein Obama. Trump was almost universally ridiculed for this "publicity stunt." Unbeknownst to the media at the time, Trump had carefully calculated his activities to generate free publicity in the media.

Earned media is free publicity worth millions of dollars. Castro readily admits that this civil action has the potential to result in tens of millions of dollars in free publicity for his 2024 Presidential campaign. Castro readily admits this civil action was carefully calculated to be an integral part of his 2024 Presidential candidacy. Even the Original Complaint was intentionally

---

[28] Fed. R. Civ. P. 11(c)(2)

and purposefully filed on January 6, 2023; the second anniversary of the attack on the United States Capitol.  Moreover, there are now two pending Petitions for Writs of Mandamus before the U.S. Court of Appeals for the Eleventh Circuit related to this case; one for a First Amendment violation for denying Castro access to the Court's Case Management and Electronic Court Filing system to efficiently petition the federal judiciary to redress his grievances and the other for Judge Aileen Mercedes Cannon's refusal to disqualify herself from presiding over this case.  Castro intends to have this case before the U.S. Supreme Court before the end of the year.  These facts do not refute the *bona fides* of Castro's candidacy; they only reinforce the absolute seriousness with which Castro is aggressively pursuing the Office of the Presidency of the United States.

In fact, after Trump first announced his Presidential candidacy on June 16, 2015, it was not until the following year on February 10, 2016, that Reuters published an article titled "Trump shows his presidential bid is no mere publicity stunt" based on his shocking upset performance in the New Hampshire primaries.

Trump now seeks to convince this Court that the same tactics and strategies he employed in his campaign to be elected to the Presidency of the United States should be disregarded in the same manner the mainstream media dismissed his candidacy: a "mere publicity stunt."

In spite of Trump's assertion, this suit is a carefully calculated legal strategy by Castro, an active 2024 Republican primary Presidential candidate, to neutralize a constitutionally unqualified candidate while elevating Castro's own national political status.

Castro's 2024 Republican Presidential Campaign activities have included building a comprehensive campaign website, a campaign store with merchandise, campaign photo sessions to highlight public support for his candidacy, and a current effort to sell his tax software, AiTax,

for an estimated $180 million to self-finance his Presidential campaign with $100 million of his own funds.

With regard to Castro's campaign website, it was originally designed as part of his 2020 Republican Primary Campaign for U.S. Senate against Senator John Cornyn (R-TX). Castro's campaign slogan at that time was "One America United." From the onset, Castro intended this Senate race to be a precursor to his 2024 Republican Presidential Campaign. As part of that campaign, Castro designed his campaign website, his campaign logo, and his campaign merchandise.

Castro ran again for U.S. Congress in 2021 with the unexpected death of Congressman Ron Wright. After that campaign ended, Castro was quoted in the Fort-Worth Star Telegram that Trump was a "false prophet" and that he would not support him.

On February 24, 2020, Forbes reported that "Mr. Castro is running for the Republican nomination to be the US Senator from Texas."[29]

On February 25, 2020, The Hill, a nationally recognized politically focused news agency, reported on Castro's 2020 Republican Senatorial Campaign and his efforts to get "Verified" on social media platform Twitter.[30]

On June 19, 2020, Vents Magazine covered "Republican Candidate John Anthony Castro" and his efforts to address police reform.[31]

---

[29] See Peter J. Reily, Wrong Signature Voids Million-Dollar Plus Refund Claim, February 24, 2020, https://www.forbes.com/sites/peterjreilly/2020/02/24/wrong-signature-voids-million-plus-refund-claim/?sh=423bc0a44cf2
[30] See Emily Birnbaum and Chris Mills Rodrigo, Twitter falling short on pledge to verify primary candidates, February 25, 2020, https://thehill.com/policy/technology/484453-twitter-falling-short-on-pledge-to-verify-primary-candidates/
[31] See RJ Frometa, Republican Candidate John Anthony Castro Raises His Voice in Support of George Floyd Protesters, June 19, 2020, https://ventsmagazine.com/2020/06/19/republican-candidate-john-anthony-castro-raises-his-voice-in-support-of-george-floyd-protesters/

On February 6, 2022, the Washington Post reported: "John Anthony Castro is a declared candidate for the Republican nomination" and discussed Castro's efforts to disqualify Trump.

On May 28, 2022, Newsweek quoted John Anthony Castro and described him as "a Republican candidate who is running for president in 2024."[32]

On July 28, 2022, Newsweek quoted John Anthony Castro's ridicule of Elon Musk describing him as "Rocket Boy" and referred to Castro as "a Republican 2024 presidential candidate."[33]

On December 12, 2022, Newsweek mentioned John Anthony Castro and directly quoted his description as a "2024 Republican Presidential Candidate Suing Trump to Disqualify Him for January 6."[34]

Castro has been mentioned and/or covered in the Washington Post, Forbes, The Hill, and Newsweek regarding his Republican candidacy.   In particular, the Washington Post and Newsweek have identified him as a 2024 Republican Presidential candidate.  Castro's efforts to earn this media coverage demonstrate the seriousness with which he is pursuing the Presidency of the United States without regard to other self-serving interests, such as books deal, media deals, or cabinet positions.  John Anthony Castro fully intends on being the President of the United States of America and Commander-in-Chief of the United States Armed Forces.

---

[32] See Xander Landen, Ron Johnson Takes Heat for Linking School Shootings to 'Wokeness',May 28, 2022, https://www.newsweek.com/ron-johnson-takes-heat-linking-school-shootings-wokeness-1711136
[33] See Alia Slisco, Elon Musk Ridiculed Over Twitter Deal Backtrack: 'Rocket Boy Taps Out', July 8, 2022, https://www.newsweek.com/elon-musk-ridiculed-over-twitter-deal-backtrack-rocket-boy-taps-out-1723122
[34] See Darragh Roche, Neil Gorsuch Just Said the Quiet Part Out Loud, December 28, 2022, https://www.newsweek.com/neil-gorsuch-quiet-part-out-loud-supreme-court-1769854

Lastly, Castro has already reached out and connected with New Hampshire and Iowa Republican Party leadership. Castro has also arranged for various trips to the state this summer to begin his grassroots door-to-door campaign, which will involve a novel and unique plan to build enough political support to have a break-out performance. While intense campaigning is not required to be recognized as a candidate, Castro nevertheless meets the standard of a very serious candidate who is genuinely pursuing the Republican nomination for the Presidency of the United States.

       **(ii)**     **Not Remote or Abstract: The Competition for Voters and Donors Has Already Begun**

This complaint is not remote or abstract. Both Castro and Trump are registered and declared candidates. Nikki Haley recently announced as well releasing only a website and a single campaign video. Castro, on the other hand, has been actively seeking to declare Trump constitutionally unqualified since early 2022 as Trump pointed out in his motion to dismiss.[35] In effect, Trump has admitted that Castro has been actively pursuing his legal strategy as part of his Presidential campaign for over a year now. Castro thanks Trump for this concession.

Trump is clearly conflating active candidacy with ballot access while ignoring the fact that many states allow for write-in candidacies. Ballot access does not control the determination of whether an individual is a candidate. There are many examples of successful write-in candidacies by candidates who did not appear on the ballot. Castro has a campaign website, publicly declared his candidacy *before* Trump, has been actively campaigning for political support on social media, has been pursuing Trump's disqualification for over a year, and has been covered by the media for

---

[35] *See* ECF 18, MTD pp. 5-6

his pursuit of Trump's disqualification.  Whether or not Trump likes it, Castro is a current and active 2024 Republican Presidential candidate.

Furthermore, there is no basis for Trump's assertion that the U.S. Supreme Court case of *Golden v. Zwickler* analyzed whether an individual was a "bona fide political candidate" as Trump claimed in his motion to dismiss.[36]  That is patently false, misleading, and potentially sanctionable under Fed. R. Civ. P. 11(c).  The U.S. Supreme Court case of *Golden v. Zwickler* involved a First Amendment challenge to a "state statute making it a crime to distribute anonymous literature in connection with an election campaign."[37]  Because Mr. Zwickler had left Congress for a 14-year term as a State Supreme Court Justice, the U.S. Supreme Court concluded that the fact that "it was most unlikely that the [former] Congressman would again be a candidate for Congress precluded a finding that there was 'sufficient immediacy and reality' here" regarding the risk of criminal prosecution for future violations.[38]  This case actually highlights the importance of hearing this case now since, by the time is reaches the U.S. Supreme Court, the issue could be moot as it was in *Golden v. Zwickler*.  Castro thanks Trump for this case reference.

This Court should exercise its *sua sponte* power to sanction Trump under Fed. R. Civ. P. 11(c)(3) for this knowingly deceptive and misleading characterization of this U.S. Supreme Court case.

### (b)    Threat of Severe Hardship if Judgment Withheld

A lack of court intervention would result in an irretrievable loss of both votes and donor funds.  Castro has been and *presently is* being harmed by Trump's actions.  As such, relief at later time would not compensate Castro for his competitive injuries in the form of diminution of votes

---

[36] *See* ECF 18, MTD p. 11
[37] *Golden v. Zwickler*, 394 U.S. 103, 109 (1969).
[38] *Id.*

and funds.[39]   Both issues must be properly considered in determining the ripeness of this controversy.[40]  There is no mechanism to redistribute cast primary ballots or refund political contributions that donors make to Trump in order to make those votes and funds available to eligible candidates.  Cash is an inherently finite and limited resource.  As such, once those voters have cast their ballots and/or donors have given their available dollars to an ineligible candidate, they are forever lost.

When an individual has no other opportunity to pursue judicial review, there is irreparable harm.[41]

Additionally, the federal court is the appropriate judiciary; Castro cannot pursue judicial review of the competitive injury in the form of diminution of votes and funds at the state level because the injury stems from Trump's ineligibility pursuant to Section 3 of the 14th Amendment, which is a federal question removable to and/or reversible by a federal court.  Hence, Castro seeks a declaratory judgment now in aid of future litigation, including, but not limited to, state-level litigation to avoid the inevitable appeal and/or removal to the federal judiciary that would delay a final judgment until after the primary elections.

While the mere presence of a constitutional question is not *de jure* irreparable harm, the controversy is ripe for judicial action if it causes an injury to an individual, is within the zone of interests sought to be protected by a constitutional provision, is based on a lack of alternative and timely remedies, and threatens the loss of votes and donors.[42]

---

[39] *Massachusetts L. Reform Inst. v. Legal Servs. Corp.*, 581 F. Supp. 1179, 1187 - 1188 (D.D.C. 1984), *aff'd sub nom.*, 737 F.2d 1206 (D.C. Cir. 1984)
[40] *Art-Metal-USA, Inc. v. Solomon*, 473 F. Supp. 1 (D.D.C. 1978)
[41] *Doe v. Mattis*, 928 F.3d 1 (D.C. Cir. 2019)
[42] *Hum. Res. Mgmt., Inc. v. Weaver*, 442 F. Supp. 241 (D.D.C. 1977).

**(i)  Withholding consideration would result in Plaintiff losing voters and donors to a constitutionally ineligible candidate.**

In *Tiktok v. Trump*, the D.C. District Court held that an *irreparable* competitive injury will be found if the alleged misconduct pushes monetizable individuals to alternative options because those individuals are unlikely to return after they have chosen another option, which results in an eroding of a competitive position.[43]

Here, the fact pattern is legally identical: Castro declared his candidacy before Trump and is now losing potential supporters and donors to Trump, which is eroding his competitive position as those potential supporters and donors would be unlikely to ever return unless Trump was no longer a candidate.

**(ii)  Withholding consideration would risk the controversy not being timely addressed by the U.S. Supreme Court before the primary elections thereby mooting the issue and forever denying Plaintiff any relief and redressability.**

Where there could be no redress after a coming deadline, there will be a finding of irreparable harm.[44]  Here, any delay risks this injury becoming irreparable and possibly mooting or transforming the case into a non-justiciable political question as the 2024 Presidential Election nears closer.  It is prudent to address these issues early, and now is the appropriate time.

The risk of violating the U.S. Constitution and the fact that there could be no do-over or redress once the election has begun is sufficient to establish a ripeness of the controversy, a justiciable injury-in-fact, and the very real threat of irreparable harm by erosion of competitive position.[45]

---

[43] *TikTok Inc. v. Trump*, 507 F.Supp. 3d 92 (D.D.C. 2020).
[44] *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1 (D.C. Cir. 2016)
[45] *Richardson v. Trump*, 496 F. Supp. 3d 165 (D.D.C. 2020).

This case will involve inevitable appeals to the United States Court of Appeals for the Eleventh Circuit as well as the United States Supreme Court. Castro cannot wait until late 2023 when both Castro and Trump are state-registered candidates because that would guarantee that the injury would become irreparable, possibly moot the case, possibly transforms the case into a non-justiciable political question, or expose the Republican Party to irreparable harm as they could lose their party's presumptive or actual nominee after millions of Americans cast their ballots in the primaries. Delaying judicial review of these questions would be a constitutional crisis of the federal judiciary's own making. Castro implores the federal judiciary to avoid unintentionally engineering a crisis. If the federal judiciary addressed these issues now via the Declaratory Judgments Act, the Republican Party would have time to recover by funding, supporting, and nominating a constitutionally eligible candidate.

### (iii)   Withholding consideration would compel Plaintiff to Invest Millions of his own funds to campaign with lower odds of success

Withholding consideration at this stage would compel Castro to spend millions of dollars of his own funds to continue being competitively injured and to compete against a constitutionally unqualified and ineligible candidate with much lower odds of success. For that reason, it is prudent for the federal judiciary to exercise its jurisdiction and consider these matters now.

### 3.   Plaintiff is Within the Zone of Interests Sought to Be Protected

Section 3 of the 14th Amendment protects a person from having to politically compete against a pro-insurrectionist politician. This is a federally protected interest under Section 3 of the 14th Amendment.

Section 3 of the 14th Amendment was specifically designed to ensure that non-insurrectionists did not have to politically compete with the more politically popular pro-insurrectionist politicians in the South.   The framers of Section 3 of the 14th Amendment specifically designed it to remove overwhelming popular pro-insurrectionists from the ballot.  As such, Castro is not simply within the "zone" of interests; Castro is the precise type of person that the framers of Section 3 of the 14th Amendment specifically sought to politically protect while Trump is the precise type of person they sought to disqualify.

Although the U.S. Supreme Court arguably abolished the doctrine of prudential standing in *Lexmark*,[46] Castro satisfies prudential standing in that his injury is particularized and concrete, he satisfies Article III standing (injury, traceability, and redressability), and he is within the zone of interests sought to be protected by Section 3 of the 14th Amendment to the U.S. Constitution.[47]

### B.  Traceability

#### 1.  Plaintiff's Injury to Traceable to Defendant's Unconstitutional Candidacy

It is undisputed that Castro's injury-in-fact is traceable to Trump.

### C.  Redressability

"Plaintiffs need not prove that granting the requested relief is certain to redress their injury, especially where some uncertainty is inevitable."[48]   Nevertheless, the "Declaratory Judgment Act created... a new remedy."[49]  Castro can only interpret Trump's objection on these

---

[46] *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)
[47] *Public Citizen v. FEC*, 788 F.3d 312 (D.C. Cir. 2015).
[48] *Competitive Enter. Inst. v. NHTSA*, 901 F.2d 107, 118 (D.C. Cir. 1990).
[49] *Walker Process Equip., Inc. v. FMC Corp.*, 356 F.2d 449, 451 (7th Cir. 1966); also see *Nat'l Cancer Hosp. of Am. v. Webster*, 251 F.2d 466 (2d Cir. 1958); *Aralac, Inc. v. Hat Corp. of Am.*, 166 F.2d 286, 290 (3d Cir. 1948).

grounds as a *de facto* request for more definitive statements on what forms of declaratory judgments Castro precisely seeks.  The following are the more definitive statements on the precise types of declaratory relief Castro seeks:

### 1. Federal Question Being Answered is a Prerequisite to Relief

Whether Trump's actions, words, and/or conduct with regard to the January 6, 2021, insurrectionary attack on the United States Capitol rise to the level of providing "aid or comfort" to the insurrection is a question of federal law.  Before Castro can pursue any relief, this federal question must be answered.  The process by which that question is answer can be had through the Declaratory Judgments Act.  A declaratory judgment would answer all of these questions and clarify the rights and legal relations between Castro and Trump.[50]

### 2. Declaratory Judgments are the Remedies that Would Redress Plaintiff's Injury by Aiding in the Removal of an Unconstitutional and Disqualified Political Competitor

Defendant's Motion to Dismiss is interpreted by Plaintiff to contain an implied Motion for a More Definite Statement on its claims upon which relief can be granted.  As such, Plaintiff provides the following more definitive statements on his claims upon which relief can be granted:

---

[50] *See McGraw-Edison Co. v. Preformed Line Prod. Co.*, 362 F.2d 339, 342 (9th Cir. 1966) ("The purpose of the Declaratory Judgment Act is to afford an added remedy to one who is uncertain of his rights and who desires an early adjudication thereof without having to wait until his adversary should decide to bring suit, and to act at his peril in the interim.'"); *also see Duggins v. Hunt*, 323 F.2d 746, 748 (10th Cir. 1963) ("The general purpose of the Declaratory Judgment Act... is to provide an immediate forum for the adjudication of rights and obligations in actual controversy where such controversy may be settled in its entirety and with expediency and economy.").

**(a) Declaration Whether Trump Provided Aid or Comfort to Insurrectionists**

Pursuant to 28 U.S.C. § 2201(a), this Court "may declare the rights and other legal relations of" Castro and Trump, including whether Trump is constitutionally eligible to pursue and/or hold the Office of the Presidency of the United States on the factual assertion that he provided aid or comfort to the January 6 Insurrectionists.

**(b)** **If Trump was Found to Have Provided Aid or Comfort to the Insurrection, Could Trump be Enjoined from Campaigning as that Would Be Knowingly Fraudulent Misrepresentation**

Pursuant to 28 U.S.C. § 2201(a), this Court "may declare" whether, if Trump was found to have provided aid or comfort to the January 6 Insurrectionists, Castro has the legal right to enjoin Trump from campaigning for the Presidency since that would violate Section 3 of the 14th Amendment, FECA, and/or constitute knowingly fraudulent misrepresentation regarding eligibility.

**(c)** **If Trump was Found to Have Provided Aid or Comfort to the Insurrection, Could Trump Be Enjoined from the Unconstitutional Act of Submitting a State Ballot Access Application**

Pursuant to 28 U.S.C. § 2201(a), Castro is asking this Court to "declare the rights" of Castro as to whether he can secure an injunction to prevent the unconstitutional act of Trump submitting a state ballot access application. In other words, whether the Court can issue an injunction preventing Trump from engaging in the unconstitutional act of submitting a state ballot access application since that would be violative of his disqualification from public office pursuant to Section 3 of the 14th Amendment.

19

**(d)**    **If Trump was Found to Have Provided Aid or Comfort to the Insurrection, Could the Declaratory Judgment Permit State-Level Enforcement to Enjoin State Election Authorities from Accepting the Ballot Application**

Pursuant to 28 U.S.C. § 2201(a), Castro is asking this Court to "declare the rights" of Castro as to whether he has standing and the right to secure an injunction to prevent individual state election authorities from accepting and processing Trump's state ballot access application.

**(e)**    **Does Plaintiff Have Standing to Enjoin the Republican Party from Nominating Trump**

Pursuant to 28 U.S.C. § 2201(a), Castro is asking this Court to "declare the rights" of Castro as to whether he would have standing and the right to secure an injunction against the Republican Party to prevent his formal nomination at the Republican National Convention if Trump won the primary election.

**(f)**    **Alternatively, as a Write-In General Election Candidate, Does Plaintiff Have Standing to Enjoin Trump's Inauguration**

Pursuant to 28 U.S.C. § 2201(a), Castro is asking this Court to "declare the rights" of Castro as to whether he, having declared and verified his intention to be a write-in candidate for the general election if he is unsuccessful in securing the nomination of the Republican Party, would have standing and the right to secure an injunction against the Joint Congressional Committee on Inaugural Ceremonies preventing the inauguration of Trump if Trump won the general election.

**(g)**    **Lastly, Declaratory Relief Act Relaxes Redressability Analysis**

The Declaratory Judgment Act does not even require that relief could be sought.  Pursuant to 28 U.S.C. § 2201(a), this Court "may declare the rights and other legal relations of" Castro and Trump on "whether or not further relief is or *could be sought*." The key phrase here is "whether or not further relief... *could* be sought." According to 28 U.S.C. § 2201(a), it is not required that

relief could be sought at the time of the filing. The Court can still "declare the rights" of Castro and Trump, including their "legal relations," such as the constitutional disqualification of Trump and Castro's standing to disqualify Trump from pursuing and/or holding public office.

In essence, the redressability inquiry is relaxed because the declaratory judgments are the redressable relief that would remedy Castro's injuries.

## II. Plaintiff Has Stated a Valid Claim under the Self-Executing Section 3 of the 14th Amendment

The U.S. Supreme Court has already refuted Trump's assertion that Castro has failed to state a claim in holding that the "contention that the federal courts are powerless to accord a litigant [relief] for a claimed invasion of his federal constitutional rights until Congress explicitly authorizes the remedy cannot rest on the notion that the decision to grant... relief involves a resolution of policy considerations not susceptible of judicial discernment."[51]

The premise of the Declaratory Judgement Act is to answer the questions that arise before the type of relief can be determined. As such, 28 U.S.C. § 2201(a) was specifically designed to circumvent the redressability requirement in a standing analysis. Nevertheless, Castro has stated a claim based on an implied cause of action directly under the self-executing Section 3 of the 14th Amendment.

### A. Section 3 of the 14th Amendment is Self-Executing and Provides an Implied Cause of Action

Trump fails to grasp the crux of Castro's claim. Just as the U.S. Supreme Court found an implied cause of action directly arising under the 4th Amendment in *Bivens*, there is also an implied cause of action under Section 3 of the 14th Amendment to the United States Constitution.[52]

---

[51] *Bivens*, 403 U.S. at 402 (Harlan, concurring opinion).
[52] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)

However, unlike the rationale and basis in *Bivens*, there is an implied cause of action under Section 3 of the 14th Amendment to the United States Constitution because it is a self-executing provision; a constitutional issue that goes back to 1868.

Some commentators dating as far back as 1868, in an attempt to neutralize the power of Section 3 of the 14th Amendment, developed the legal theory that this provision of the U.S. Constitution was unenforceable without enabling legislation; thus, not self-executing providing an implied cause of action. As evidence of this, they cited Section 5 of the 14th Amendment, which states that "Congress shall have power to enforce, by appropriate legislation, the provisions of this article."

However, Section 5 of the 14th Amendment was only referring to the enforcement of Section 1 against belligerent states that continued to deny equal protection to all their citizens. The framers of the 14th Amendment certainly did not intend for the other sections to be unenforceable without enabling legislation, such as Section 2 "Apportionment of Representatives," Section 4 "Validity of Public Debt," or Section 3 "Disqualification as Officers or Electors of Persons Who Have Engaged in Insurrection or Rebellion."

In fact, it was the President of the Confederacy, Jefferson Davis, who, in 1868, contended that Section 3 was, in fact, self-executing and, therefore, barred his criminal trial for treason.[53] Moreover, it was United State Supreme Court Justice Salmon P. Chase who agreed in Jefferson Davis' 1867 criminal trial that Section 3 was self-executing; thereby implicating the

---

[53] *See* Gerard N. Magliocca, Amnesty and Section Three of the Fourteenth Amendment, 36 Const. Comment. 87 (2021).

prohibition against Double Jeopardy.[54]   In 1868, Salmon P. Chase unsuccessfully sought the Democratic presidential nomination.

Shortly thereafter, in 1869, when a black criminal defendant challenged his conviction on the grounds that the judge who presided over his trial fought for the Confederacy and was, therefore, ineligible to preside over his trial thereby rendering his guilty verdict null and void, a racially biased Chief Justice Chase reversed his position and declared that Section 3 was not self-executing.[55]   In 1872, Salmon P. Chase unsuccessfully sought the Republican presidential nomination.

Following these irreconcilable rulings from a clearly biased Chief Justice Chase who could not make up his mind, Congress decided to act on its own by enacting Section 3 enforcement statutes and, shortly thereafter, federal prosecutors began bringing actions to oust ineligible officials, including half of the Tennessee Supreme Court.[56]

Congress' enactment of criminal enforcement legislation was not an admission that Section 3 was not self-executing; it was to give law enforcement the power to initiate removal actions without having to wait for a noble political candidate to stand up and do the right thing.  It was also to avoid the lunacy of a biased, conflicted, and politically active Chief Justice who could

---

[54] *See Case of Davis*, 7 F. Cas. 63, 90, 92-94, (C.C.D. Va. 1867) (No. 3,621a) (describing *Davis'* argument and the Government's response); *Id.* at 102 (noting the Chief Justice's view). According to the self-executing theory, insurrection was reduced to a political crime for which the only remedy was a lifetime ban from public office thereby giving rise to a Double Jeopardy defense.  If, however, Section 3 of the 14th Amendment was not self-executing, a politician could be criminally charged for seditious conspiracy.

[55] *In re Griffin*, 11 F. Cas. 7 (C.C.D. Va. 1869) (No. 5,815).

[56] *See* Act of May 31, 1870 (First Civil Rights Enforcement Act of 1870), 41 Cong. Ch. 114 § 14, May 31, 1870, 16 Stat. 140, 143; *Id.* at § 15 (imposing criminal penalties for knowing Section Three violations); Sam D. Elliott, When the United States Attorney Sued to Remove Half the Tennessee Supreme Court: The Quo Warranto Cases of 1870, 49 Tenn. Bar J. 20 (2013).

not perform the functions of his office in a neutral, intellectual, fair, and impartial manner, which Castro can empathize with.

In 1871, Amos Powell was indicted, via an enabling statute making it a crime to knowingly violate Section 3 of the 14th Amendment, "for accepting the office of sheriff when disqualified from holding office by the 14th Amendment... [and the] indictment charged that the defendant knowingly accepted office under the state of North Carolina, to which he was ineligible under the provisions of Section 3 of the 14th Amendment."[57]  In other words, to attach criminal penalties to holding office in violation of Section 3 of the 14th Amendment, enabling legislation is absolutely required.  Aside from criminal penalties, however, it is self-executing with an implied civil cause of action for a fellow candidate.

Trump's failure to address whether he believes Section 3 of the 14th Amendment is self-executing or not should be interpreted by this Court as a waiver of the issue thereby confirming its self-executing nature, which means Castro has stated a claim upon which relief can be granted.

## III.    Plaintiff is Entitled to the More Lenient *Pro Se* Standard

Castro is appearing in front of this Court, *pro se*. As such, this Court should apply a less stringent approach. The Eleventh Circuit explained that "*[p]ro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."[58] When determining a motion to dismiss, a Court should determine using a more liberal standard whether sufficient facts were alleged.[59]

The Supreme Court has held that *pro se* petitioners more often than not craft an inartful complaint. Because the standard is different for *pro se* parties, "a [*pro se*] complaint

---

[57] *See U.S. v. Powell*, 65 N.C. 709 (C.C.D.N.C. 1871).
[58] *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998)
[59] *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990).

should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[60]

        Castro plead sufficient facts to withstand a dismissal phase in this proceeding, he plead sufficient facts in particular when viewed through the *pro se* standard.

        The motion is to be decided on whether the Complaint alleges sufficient facts, and it clearly does.

The Motion to Dismiss should be DENIED.

Respectfully submitted

February 28, 2023

By: _____

JOHN ANTHONY CASTRO
12 Park Place
Mansfield, TX 76063
Tel. (202) 792- 6600
J.Castro@CastroandCo.com

**PLAINTIFF *PRO SE***

---

[60] *Hughes v. Rowe*, 449 U.S. 5, 10 (1980).

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2023, a true and accurate copy of the foregoing

*Plaintiff's Verified Response in Opposition to Defendnat's Motion to Dismiss* was served on

Defendant's counsel of record via U.S. First Class Mail and further served on Defendant by

emailing the forgoing document to Defendant's counsel of record as follows:


Lindsey Halligan
Florida Bar No. 109481
511 SE 5th Avenue
Fort Lauderdale, FL 33301
Email: lindseyhalligan@outlook.com


Jacob F. Grubman
IFRAH LAW, PLLC
1717 Pennsylvania Avenue, NW, Suite 650
Washington, DC 20006
Email: jgrubman@ifrahlaw.com


JOHN ANTHONY CASTRO

## DECLARATION OF
## JOHN A. CASTRO

I, John Anthony Castro, pursuant to 28 U.S.C. § 1746 declare as follows:

1.      I am an FEC-registered Republican primary presidential candidate (Candidate FEC ID Number P40007320) for the 2024 Presidential Election.

2.      In the event I am unsuccessful in securing the nomination of the Republican Party, I intend to pursue the status of a Write-In Candidate in Alabama, for which there are no prerequisites.  As such, due to this mere intent alone, I am presently a general election "candidate" for the Presidency of the United States under Alabama state law.

3.      In the event I am unsuccessful in securing the nomination of the Republican Party, I intend to pursue the status of a Write-In Candidate in New Jersey, for which there are no prerequisites.  As such, I am presently a "candidate" for the Presidency of the United States under New Jersey state law.

4.      In the event I am unsuccessful in securing the nomination of the Republican Party, I intend to pursue the status of a Write-In Candidate in Oregon, for which there are no prerequisites.  As such, I am presently a "candidate" for the Presidency of the United States under Oregon state law.

5.      In the event I am unsuccessful in securing the nomination of the Republican Party, I intend to pursue the status of a Write-In Candidate in Vermont, for which there are no prerequisites.  As such, I am presently a "candidate" for the Presidency of the United States under Vermont state law.

6.      Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury that the entirety of this instrument as well as all factual assertions in Plaintiff's Reply to Defendant's Motion to Dismiss is true and correct.

Executed on February 28, 2023.

**JOHN ANTHONY CASTRO**